<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:19-cr-00579 (BRM) |
| v. | **OPINION** |
| JOSEPH CAPO, | **TEMPORARILY FILED UNDER SEAL** |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Joseph Capo's ("Defendant") Motion to Modify Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (ECF No. 110.) Plaintiff United States of America (the "Government") filed an opposition. (ECF No. 117.) Defendant filed a reply. (ECF No. 120.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hear oral argument, for the reasons set forth below and for good cause having been shown, Defendant's Motion is **DENIED**.

**I.    BACKGROUND**

On April 17, 2018, Defendant was arrested on a criminal complaint charging him with conspiracy to commit wire fraud. On July 2, 2018, Defendant was released upon execution of an unsecured appearance bond. (ECF Nos. 26, 27.) On August 21, 2019, Defendant pleaded guilty to

---

[1] Defendant filed the Motion *pro se* simultaneously with a motion for miscellaneous relief, including a request for an expedited evidentiary hearing with regard to the Motion and for the appointment of counsel. (*See* ECF No. 111.) On May 25, 2022, the Court denied Defendant's request for a hearing, granted his request for the appointment of counsel, and appointed attorney Michael Gilberti, Esq. (ECF No. 112.)

a one-count information, which charged that, from September 2013 through October 2015, Defendant knowingly and intentionally conspired and agreed with others to commit wire fraud in violation of 21 U.S.C. §§ 1343 and 1349. (ECF Nos. 70–73.)

Defendant's sentencing was initially scheduled for January 30, 2020. The date was later postponed four times amid the initial wave of the COVID-19 pandemic. On November 18, 2020, Defendant appeared by video conference for sentencing. (*See generally* Tr. (ECF No. 116).) At the hearing, the Court considered the Presentence Report ("PSR") filed by the United States Probation Office ("USPO"), the parties' sentencing submissions, and correspondence from Defendant's father. (*Id.* at 4:18–25.) The Court found Defendant had generally been compliant with the terms of his pretrial release and added it would not consider an incident in New York State regarding an alleged ATM theft in the imposition of Defendant's sentence. (*Id.* at 5:1–12.)

The USPO calculated a total offense level 14 and a criminal history category of IV, to which a guidelines range of thirty-seven to forty-six months attaches. (*Id.* at 8:8–10.) The Court granted a one-level downward variance, consistent with the plea agreement, providing for a guideline sentence of thirty-three to forty-one months. (*Id.* at 8:22–25.) The Court concluded the one-level variance was appropriate in light of Defendant's physical condition,[2] his family ties and responsibilities, and the plea agreement. (*Id.* at 9:7–11.)

---

[2] In a letter to the USPO, dated March 27, 2020, Defendant described his physical health status as "poor." (PSR ¶ 153.) He indicated that he previously suffered a heart attack, had 79% blockage on the left side of his heart, had heart scans every six months, and was undergoing physical therapy twice a week. (*Id.*) During the presentence interview, Defendant discussed having stents placed in February 2019 and residual back pain stemming from a displaced disk in his back that causes lower back pain. (*Id.*) According to the PSR, Defendant suffered from chronic right shoulder pain, Type 2 diabetes, coronary artery disease, hypertension, hyperlipidemia, sleep apnea, and disease of nerves in the arms, legs, hands and feet. (PSR ¶ 156.)

In fashioning its 36-month sentence, the Court specifically explained the fraud perpetrated "was a serious offense . . . that has been a characteristic of the defendant throughout his entire life." (*Id.* at 15:21–23.) The Court described the sophistication of Defendant's scheme to defraud numerous retailers and retail locations through the manipulation of unwitting employees into loading gift cards for Defendant's use. (*Id.* at 15:23–16:7.) The Court discussed Defendant's history of involvement with the criminal justice system, consisting of forty-seven arrests in twenty-nine matters, and noted most of his prior convictions had been for matters of theft and fraud. (*Id.* at 18:6–12.) The Court observed the conspiracy for which it was sentencing Defendant began in the months following his release from state prison. (*Id.* at 18:12–13.) The Court considered that, over the Defendant's long-storied criminal history and periods of incarceration, deterrence was apparently not taken. (*Id.* at 16:8–10.) However, the Court acknowledged Defendant had a family, a house, and a child with special needs and showed remorse and a desire to turn his life around, and the Court expressed its belief that Defendant would not be part of the criminal justice system again. (*Id.* at 16:12–20; 18:14–22.) The Court considered Defendant's comorbidities in light of the COVID-19 pandemic and noted his conditions placed him at a higher risk of infection. (*Id.* at 17:19–22.) In light of these factors, the Court imposed a sentence of thirty-six months of imprisonment followed by thirty-six months of supervised release with special conditions and ordered restitution and forfeiture. (*Id.* at 15:2–22:4; J. (ECF No. 86).)

On February 16, 2021, Defendant moved to delay his surrender date, citing health concerns and the prospect of back surgery. (ECF No. 88.) The Court, over the Government's objection, delayed Defendant's surrender date to June 1, 2021. (ECF No. 93.) On May 21, 2021, Defendant again moved to delay his surrender date, this time citing the need for surgery to his right leg and a period of recovery. (ECF No. 96.) After holding a status conference on June 22, 2021, the Court

issued an order delaying Defendant's surrender date to November 1, 2021. (ECF No. 101.) The Court's order, however, stated that "no such further continuance of his surrender date shall be granted." (*Id.*) Despite this, in late October 2021, Defendant again moved to delay his surrender date for an additional ninety days, citing the need to recover from surgery to his left leg. (ECF No. 103.) Over the Government's objection, the Court delayed Defendant's surrender date one final time to February 1, 2022. (ECF No. 109.)

Defendant surrendered to FCI Fort Dix ("Fort Dix") on February 1, 2022. On February 9, 2022, seven days after entering Fort Dix, Defendant submitted a request for compassionate release to the warden. (ECF No. 118-1.) On April 1, 2022, the warden denied this request. (ECF No. 118-2.)

Defendant filed this Motion on May 23, 2022. (ECF No. 110.) Defendant argues he suffers from Type 2 diabetes, lung disease, chronic obstructive pulmonary disease ("COPD"), coronary artery disease, hypertension,[3] obesity and a history of smoking. (*Id.* at 8–9.) He claims he has not yet been vaccinated nor has he previously been infected with COVID-19, and these facts, combined with his age—Defendant is 51 years old—and health conditions constitute extraordinary and compelling circumstances for modification of his sentence because these conditions place him at an increased risk for complications or death should he be infected with the COVID-19 virus. (*Id.* at 9–11.) He contends Fort Dix is ill-equipped to handle the spread of the COVID-19 virus. (*Id.* at 11–13.) He further argues the factors under 18 U.S.C. § 3553(a) counsel in favor of release. (*Id.* at 13–24.)

---

[3] Defendant argues lisinopril, one of the medications he takes for his hypertension, may increase his COVID-19-related risks. (ECF No. 110 at 9.)

On July 26, 2022, the Government filed an opposition to Defendant's Motion. (ECF No. 117.) On August 24, 2022, Defendant filed a reply. (ECF No. 120.)

## II.   LEGAL STANDARD

A district court may modify a sentence of imprisonment only in "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the Bureau of Prisons ("BOP") or by defendants after exhausting their administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). A court may reduce a sentence if the Court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission has promulgated a policy statement, in relevant part, allowing a court to grant compassionate release or a sentence reduction upon a finding of (i) extraordinary and compelling reasons; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the § 3553(a) factors, to the extent applicable ("Policy Statement"). *United States v. Williams*, No. 17-0379, 2021 U.S. Dist. LEXIS 1261, at *3 (D.N.J. Jan. 4, 2021) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. Sentencing Comm'n 2018)).

Neither § 3582(c)(1)(A) nor the Policy Statement define the key terms "extraordinary and compelling," "apparently providing courts with some flexibility and discretion to consider the

unique circumstances of a motion for compassionate release." *United States v. Batista*, No. 18-415, 2020 U.S. Dist. LEXIS 139068, at *4 (D.N.J. Aug. 5, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)). The Sentencing Commission has defined the term "under the previous version of section 3582(c)(1)(A)," but it has not "updated its Policy Statement since the passage of the First Step Act." *United States v. Alexander*, No. 19-32, 2020 U.S. Dist. LEXIS 85609, at *6 (D.N.J. May 15, 2020) (citing *Rodriguez*, 451 F. Supp. 3d at 397). Nevertheless, "the present Policy Statement provides useful guidance for district courts in identifying extraordinary and compelling reasons for a defendant's eligibility for compassionate release." *United States v. Gwaltney*, No. 17-00381, 2020 U.S. Dist. LEXIS 186893, at *4–5 (D.N.J. Oct. 8, 2020) (citations omitted).

"The Sentencing Commission's Policy Statement provides that a defendant may demonstrate extraordinary and compelling reasons for compassionate release based on: (1) the medical condition of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; or (4) for 'other reasons.'" *Id.*, at *5 (citing U.S.S.G. § 1B1.13 cmt. n.1). The defendant's "[m]edical [c]ondition," constitutes an extraordinary and compelling reason when:

> (i) The defendant is suffering from a terminal illness . . . ; [or]
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A).

"Compassionate release is discretionary, not mandatory; even if a defendant is eligible, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Parnell*, No. 21-2312, 2022 U.S. App. LEXIS 510, at *3 (3d Cir. Jan. 7, 2022).

### III.    DECISION

#### A.    Exhaustion of Remedies

The Government does not dispute Defendant satisfied the statutory exhaustion requirement.[4] (ECF No. 117 at 4.) The Court, then, considers whether (1) "extraordinary and compelling reasons" warrant a sentence reduction; and (2) "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

#### B.    "Extraordinary and Compelling Reasons"

##### 1.    Defendant Has Not Identified a Terminal Illness

As an initial matter, Defendant has not identified a "terminal illness" under the Sentencing Commission's Policy Statement. U.S.S.G. § 1B1.13 cmt. n.1(A)(i).[5] A "terminal illness" that constitutes an extraordinary and compelling reason for release means "a serious and advanced illness with an end of life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral

---

[4] Section 3582(c)(1)(A) provides a court entertain a motion for compassionate release only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" *See United States v. Epstein*, No. 14-287, 2020 U.S. Dist. LEXIS 62833, at *4–5 (D.N.J. Apr. 9, 2020) (quoting 18 U.S.C. § 3582(c)).

[5] The Sentencing Commission's Policy Statement found in application note 1(A)(ii) to U.S.S.G. § 1B1.13, while not binding on this Court, may be considered by the Court in its "extraordinary and compelling" analysis. *United States v. Jefferson*, No. 21-2020, 2021 U.S. App. LEXIS 28572, at *6 (3d Cir. Sep. 21, 2021) (citing *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021)).

sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Here, Defendant has not made such a showing.

### 2.    Defendant's Medical Conditions and Likelihood of Infection

There are two components to the "extraordinary and compelling" medical reasons inquiry: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101, 2020 U.S. Dist. LEXIS 132220, at *7 (D.N.J. July 27, 2020).

The Centers for Disease Control and Prevention ("CDC") recognizes diabetes, heart disease, COPD, obesity and a history of smoking can place an individual at higher risk of severe outcomes from COVID-19.[6] The Government concedes Defendant's health conditions increase his risk but argues Defendant's medical records reflect he is receiving adequate medical care at Fort Dix. (ECF No. 117 at 11.) The Government further argues Defendant's risk of COVID-19-related complications is mitigated because he is vaccinated against COVID-19. (*Id.* at 3, 11–18.) According to the Government, on the day Defendant surrendered to Fort Dix, he was offered a COVID-19 vaccine but declined and stated he had already received two doses of the Pfizer COVID-19 vaccine. (*Id.* at 3.) In support of this position, the Government submits an executed COVID-19 Vaccine Consent form, dated February 1, 2022, which purports to bear Defendant's signature. (ECF No. 118.) In reply, Defendant claims he is unvaccinated and contends the signature on the form was copied and pasted from an unrelated document. (ECF No. 120 at 2–3.) Defendant further claims he would accept the vaccine if it were offered to him. (*Id.* at 3.)

---

[6] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited October 19, 2022).

The CDC has stated vaccination reduces the risks of contracting COVID-19 and experiencing its potentially severe complications.[7] This Court has previously noted other courts view receipt of a COVID-19 vaccine and refusal to receive a COVID-19 vaccine weigh equally against a finding of an "extraordinary and compelling reason" for a sentence reduction based on the risk to incarcerated defendants presented by the COVID-19 virus. *U.S. v. Guzman*, No. 19-00431, 2022 U.S. Dist. LEXIS 14001, at *11 (D.N.J. Jan. 26, 2022) (collecting cases). The Third Circuit recently recognized that a defendant's refusal to be vaccinated against the virus "undermines any claim that his risk of contracting the virus justified relief." *United States v. Rene*, No. 22-1642, 2022 U.S. App. LEXIS 15197, at *3 (3d Cir. June 2, 2022) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred.")); *see also Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (taking judicial notice that COVID-19 vaccines are widely available and rejecting claim that prisoner was under imminent danger of physical injury from COVID). Absent a showing that an inmate is unable to receive or benefit from a vaccine or he remains vulnerable to severe infection notwithstanding a vaccine, refusal to be vaccinated weighs against a finding of extraordinary and compelling circumstances. *Broadfield*, 5 F.4th at 803.

Here, Defendant alleges he is unvaccinated. However, Defendant has not shown he is unable to receive a vaccine, nor has he shown he is unable to benefit from a vaccine or he would remain vulnerable to severe infection notwithstanding a vaccine.[8] Therefore, in a post-vaccine

---

[7] CDC, *COVID-19 Vaccines Work*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited October 19, 2022).

[8] Defendant has not submitted proofs from his prior treating physicians indicating he was unvaccinated at the time of the various medical procedures that immediately preceded his incarceration. As the Government notes, Defendant was eligible to receive a vaccine in New Jersey

9

world, the COVID-19 risk associated with Defendant's medical conditions does not constitute an

extraordinary and compelling reason for compassionate release. The result would be the same if

Defendant were vaccinated. To the extent Defendant argues compassionate release is warranted

because of inadequate medical care at Fort Dix, his medical records demonstrate his various

conditions are being managed and treated by the Fort Dix medical staff through prescription

medication, dietary recommendations, medical equipment, specialist consultations, modifications

to his treatment, and follow-up appointments. (*See generally* ECF No. 118-3.) His desire to receive

other treatments not provided at Fort Dix is not a bases for release. *Lasko v. Watts*, 373 F. App'x

196, 203 (3d Cir. 2010) (finding "a prisoner has no right to choose a specific form of medical

treatment," so long as the treatment provided is reasonable).

Defendant contends the conditions at Fort Dix increase his risk of severe illness from

COVID-19 infection. (ECF No. 110 at 11–13.) The Court concludes Fort Dix has mitigation efforts

aimed at controlling the spread of the coronavirus that appear to be effective and the current

conditions at Fort Dix do not present an extraordinary and compelling circumstance. As of October

19, 2022, Fort Dix had zero active inmate cases and five active staff cases.[9] This does not suggest

a significant risk of COVID-19 infection at Fort Dix at this time. *See United States v. Vallejo*, No.

07-00154, 2022 U.S. Dist. LEXIS 143473, at *7 (D.N.J. Aug. 10, 2022) (finding the conditions in

Fort Dix did not rise to a level where they might be considered extraordinary and compelling when

zero inmates were currently infected and four staff had positive tests); *United States v. Spencer*,

---

prior to his incarceration. (ECF No. 118 at 12, n.15.) Defendant's medical records from Fort Dix demonstrate several consultations with medical staff, most recently in July 2022 (*see generally* ECF No. 118-3), yet he offers no proof he has been denied the vaccine following a request by him to receive one.

[9] BOP, *COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited October 19, 2022).

No. 14-050, 2022 U.S. Dist. LEXIS 129433, at *8 (D.N.J. July 21, 2022) (same). Accordingly, the risk presented at Fort Dix at this time does not present an extraordinary and compelling reason for Defendant's release.

In summary, a sentence modification or reduction under 18 U.S.C. § 3582(c)(1)(A)(i) is not warranted in Defendant's case because he has failed to demonstrate extraordinary and compelling reasons for compassionate release.

### C.    Section 3553(a) Factors

Even if the Court were to find extraordinary and compelling reasons were present, Defendant has not demonstrated early release would be appropriate under § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

Defendant argues modification of his sentence to serve the remainder of his term non-custodially with special conditions satisfies the § 3553(a) factors. (ECF No. 110 at 13.) He asks the Court to consider his age at the time of his past conduct and his current age, claiming he has "aged out of crime." (*Id.* at 16.) He also claims to have strong family ties to his father, wife and children, including one child who has special needs. (*Id.* at 16–17.) He describes how incarceration has interfered with his surgical recovery and his constant pain from medical conditions for which the BOP refuses to provide medication.[10] (*Id.* at 17.) He claims he intends to resume employment with his previous employer upon release from custody. (*Id.* at 18.) He notes the seriousness of wire fraud, but argues the offense was committed on fewer than twenty occasions, the majority

---

[10] Defendant also argues his vaccination status warrants modification of his sentence, and claims even vaccinated, he will remain vulnerable to serious risks given his comorbidities. (ECF No. 110 at 15.) However, as discussed above, Defendant has failed to demonstrate he is unable to receive or benefit from the vaccine while incarcerated, vaccination is generally understood to mitigates a defendant's risk, and a failure to vaccinate is generally considered a self-imposed risk. *See* Section III.B.2.

occurring in 2013. (*Id.* at 18–20.) He also notes the absence of additional criminal history between

his last offense in October 2015 and the date of his arrest in 2018. (*Id.* at 18.) He argues his crime

had no impact on any one individual and the impact on corporate victims is addressed through

Court-ordered restitution. (*Id.* at 19.) He contends his sentence is not substantial, and, as such,

modification of the sentence to home confinement promotes respect for the law. (*Id.* at 19.) He

further contends incarceration of a person with his medical conditions in light of COVID-19

undermines, rather than promotes, respect for the law and his punishment is therefore unjust. (*Id.*

at 20–22.) He argues home confinement is a sufficient deterrent and the conditions of his release

may be fashioned to include the means by which to protect the public. (*Id.* at 22–23.) He asserts

his release from custody is necessary to continue the medical treatments initiated prior to his

incarceration. (*Id.* at 23.) Defendant contends the need to avoid sentence disparities is not

applicable to his case due to his unique health circumstances. (*Id.* at 24.)

The Court sees no reason to disturb the sentence it previously imposed. At the time of

sentencing in November 2020, less than 22 months ago, the Court was well aware of the serious

concerns presented by the COVID-19 virus. (ECF No. 116 at 17:19–22.) Defendant's arguments

regarding his family ties, medical conditions, his criminal history,[11] and the evidence of his

remorse and rehabilitation were all considered by the Court prior to sentencing. (*Id.* at 15:2–19:1.)

As the Court noted at the time of sentencing, the fraud perpetrated by Defendant "was a serious

offense . . . that has been a characteristic of the defendant throughout his entire life." (*Id.* at 15:21–

25.) To date, Defendant has served less than eight months of his thirty-six-month sentence. *See*

*United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence

---

[11] While Defendant claims to have "aged out of crime" and asks the court to consider his youth at the time of the commission of his past conduct, the Court notes Defendant, now 51 years old, was 44 years old in October 2015, the last date of the offense of conviction.

reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.") In that time, the BOP appears to be managing, treating, and monitoring his medical conditions. *See* Section III.B.2. Accordingly, the Court again finds the applicable sentencing factors under § 3553(a) do not indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Modify Sentence (ECF No. 110) is **DENIED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  October 19, 2022